| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br>   AGRERA INVESTMENTS LTD.,<br>                                             Petitioner,<br>               v.<br>   VLADIMIR PALANT, *et al.*,<br>                                             Respondents.<br>------------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: <u>October 3, 2014</u><br><br>13 Civ. 8721 (KPF)<br><br><u>OPINION AND ORDER</u> |

KATHERINE POLK FAILLA, District Judge:

       Petitioner Agrera Investments Ltd. ("Agrera") has filed this motion for summary judgment on its petition for confirmation of a December 15, 2011 arbitration award (the "Final Award") pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), as incorporated in the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 201-208. Respondents Vladimir Palant, Boris Pokrass, the Severinovskiy Family Trust, and Alex Zdanov have not opposed the petition or the summary judgment motion, nor have they otherwise appeared in this action. For the following reasons, Petitioner's motion is granted.

## BACKGROUND[1]

       Agrera is a limited liability company, established and existing under the laws of the Republic of Cyprus. (56.1 Stmt. ¶ 2). Beginning in July 2007,

---

[1] The record references in this Opinion are to Agrera's supporting memorandum of law ("Pet. Br.") (Dkt. #12); its Local Civil Rule 56.1 Statement of Material Facts Not in Issue ("56.1 Stmt.") (Dkt. #13); the Final Award, included as Exhibit A to the Declaration of Jonathan I. Blackman (Dkt. #14-1); and the Membership Interest Purchase Agreement

Agrera entered into a series of arrangements, including the Membership Agreement, with Respondents Palant, Pokrass, Mark Severinovskiy (predecessor to the Severinovskiy Trust), and Zdanov. (*Id.* at ¶ 7).[2] The Membership Agreement contained an arbitration clause, which provided that the American Arbitration Association (the "AAA") would administer any arbitration and, further, that any such arbitration would be seated in New York, New York. (*Id.* at ¶ 8; Membership Agreement 32-33, ¶ 11.04).

Through the Membership Agreement, Agrera purchased an approximately 4.3% interest in Respondents' company, Stelex LLC ("Stelex"), for $15,000,000. (56.1 Stmt. ¶¶ 9, 11).[3] Stelex is an Illinois limited liability company that owned CCI-Lubelia, a Ukrainian company that held coal mining licenses in Ukraine. (*Id.* at ¶ 10). The Membership Agreement contemplated that Respondents would restructure Stelex and conduct an initial public offering ("IPO") of securities in the new company. (*Id.* at ¶ 12). The parties agreed to a put option, which would allow Agrera to require Respondents to buy back all of its shares for $15,000,000 plus interest if the IPO did not occur

---

between the parties, included as Exhibit B to the Declaration of Jonathan I. Blackman ("Membership Agreement") (Dkt. #14-2 & 14-3).

[2] At the time of the Final Award that Cypriot company Agrera now seeks to enforce, Respondents Palant and Pokrass resided in Ukraine, and Respondent Zdanov resided in the United States. The Severinovskiy Trust was a New York trust. Each Respondent was a part owner of Lubel Coal Company, Ltd. ("Lubel Coal"), the eventual successor to Stelex and a British Virgin Islands company. (56.1 Stmt. ¶¶ 3-6). This arbitral award therefore has a reasonable relationship with one or more foreign states and falls squarely within the scope of awards covered by the New York Convention. *See* 9 U.S.C. § 202.

[3] Agrera made payments under the Membership Agreement as follows: $3,000,000 to Palant; $650,000 to Pokrass; $4,350,000 to Mark Severinovskiy; and $7,000,000 to Zdanov. (56.1 Stmt. ¶ 11).

by January 1, 2009 (the "Put Option"). (*Id.*). The new company, Lubel Coal, was created, but the IPO did not occur by January 1, 2009. (*Id.* at ¶ 13).

Rather than immediately exercise its Put Option, Agrera twice agreed to negotiate extensions with Respondents, and twice entered into amendments to the Membership Agreement. (56.1 Stmt. ¶¶ 14-19). Along with an extended deadline of March 1, 2010, the first amendment provided for a 12% interest rate, compounded annually, on the Put Option purchase price and required payment within 90 days of exercise of the Put Option. (*Id.* at ¶¶ 14-15). When no IPO occurred by the extended deadline, Agrera exercised the Put Option. (*Id.* at ¶¶ 16-17). Respondents and Agrera then negotiated a second amendment extending the deadline to make full payment to April 28, 2011, if no IPO had occurred by that time. (*Id.* at ¶¶ 18-19). The IPO did not occur, nor did Respondents make full payment under the Put Option, by April 28, 2011. (*Id.* at ¶ 20). On May 4, 2011, Agrera provided Respondents with written notice demanding immediate payment. (*Id.* at ¶ 21).

On May 6, 2011, pursuant to the arbitration clause in the Membership Agreement, Agrera made a demand for arbitration with the AAA. (56.1 Stmt. ¶ 22). After the appointment of the arbitral tribunal (the "Tribunal"), the submission of pleadings and witness statements, and document discovery, the parties arbitrated their dispute in New York on November 2 and 3, 2011. (*Id.* at ¶ 24). Two witnesses, including Zdanov, testified at the hearing. (*Id.* at ¶ 25). Both parties made post-hearing submissions, and the Tribunal declared the hearings closed on December 2, 2011. (*Id.* at ¶ 26). On December 15,

3

2011, the Tribunal issued its decision, which awarded Agrera a total of $19,188,767, plus interest at a rate of 12%, compounded annually, from April 28, 2011, to the date payment is made. (*Id.* at ¶¶ 27-28).[4] Additionally, the Tribunal awarded Agrera legal fees and expenses in the amount of $300,000; administrative fees in the amount of $24,219; and arbitrators' fees in the amount of $226,234.87, for a total of $550,453.87 in fees. (*Id.* at ¶ 29).[5] Respondents have not moved to vacate, modify, or correct the Final Award.

On December 9, 2013, having not received any payment on the award from Respondents, Agrera filed the instant action, petitioning this Court for confirmation of the Final Award pursuant to Section 207 of the FAA, 9 U.S.C. § 207. (56.1 Stmt. ¶ 31; Dkt. #1).[6] Service of the Summons, Notice of Petition, Petition, and supporting papers was effected on Respondents on December 18, 2013. (Dkt. #5-7). Respondents made no response to the Petition and did not file a notice of appearance at that time. Thereafter, in accordance with the Court's January 28, 2014 Order (Dkt. #9), Agrera filed the instant motion for summary judgment on March 3, 2014 (Dkt. #11-14). Respondents did not file any opposition and still have not appeared in this action.

---

[4] The Tribunal ordered that payment was to be made within 30 days of Respondents' receipt of the Final Award, and ordered that the Respondents pay the amount severally as follows: Palant, $3,837,752.47; Pokrass, $825,117.45; the Severinovskiy Family Trust, $5,564,742.71; and Zdanov, $8,961,154.37. (56.1 Stmt. ¶ 28).

[5] The Tribunal ordered Respondents to pay this amount severally in proportion to the amount for which each Respondent was responsible in the principal award. (56.1 Stmt. ¶ 30).

[6] This filing was timely, within the statutory limitations period of three years from the entry of the arbitral award. *See* 9 U.S.C. § 207.

4

## DISCUSSION

**A.     Applicable Law**

"It is well established that courts must grant an arbitration panel's decision great deference."  *Duferco Int'l Steel Trading* v. *T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).  Accordingly, the confirmation of an arbitration award generally is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)) (quotation marks omitted).[7]  A petition to confirm should be "treated as akin to a motion for summary judgment based on the movant's submissions," and where the non-movant has failed to respond, the court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  *D.H. Blair*, 462 F.3d at 109-10 (citation omitted).[8]

A motion for summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see El Sayed* v. *Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).  The moving party bears the burden of demonstrating the absence of a

---

[7]  "'[D]efault judgments in confirmation/vacatur proceedings are generally inappropriate.'" *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (quoting *D.H. Blair*, 462 F.3d at 109).

[8]  Indeed, pursuant to the Court's January 28, 2014 Order (Dkt. #9), Petitioner has in fact submitted a motion for summary judgment on its petition.

5

material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986); *El Sayed*, 627 F.3d at 933. When the moving party has asserted facts showing that the non-movant's position cannot be sustained, the opposing party must "set forth specific facts demonstrating that there is a genuine issue for trial," and cannot "merely rest on the allegations or denials" contained in the pleadings. *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (citation and quotation marks omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts — "facts that might affect the outcome of the suit under the governing law" — will properly preclude the entry of summary judgment. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *SCR Joint Venture L.P.* v. *Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).

A court's review of an arbitration award is "severely limited" so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation. *Willemijn Houdstermaatschappij, BV* v. *Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citation omitted). "The showing required to avoid summary confirmation of an arbitration award is high," *id.*; *see also D.H. Blair & Co.*, 462 F.3d at 110, and a party moving to

vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law," *Wallace* v. *Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (citation omitted). Pursuant to the New York Convention as incorporated by the FAA, a district court, upon petition by a party to a qualifying arbitral award, "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the ... Convention."  9 U.S.C. § 207.[9]

---

[9]   The New York Convention sets forth seven grounds for denial of confirmation.  Five are contained in Article V(1):

> (a) The parties to the agreement [to arbitrate] were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country were the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention art. V(1).  Two additional grounds are contained in Article V(2):

> (a) The subject matter of the difference is not capable of settlement by arbitration 14 under the law of that country [i.e., the country where recognition and enforcement is sought]; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

7

Thus, a party seeking vacatur of an arbitrator's decision "must clear a high hurdle." *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (citations and quotation marks omitted).

**B.     Analysis**

Petitioner has sufficiently supported its petition. First, there are no material facts in dispute: Respondents have not contested any of the material facts upon which Agrera's motion for summary judgment is based, and Agrera has cited to record evidence for each material fact it sets forth. (*See* Pet. Br. 4-5; *see generally* 56.1 Stmt.).

Second, a colorable basis exists to support the Final Award: the Tribunal reviewed submissions from both sides, allowed document discovery, conducted a hearing during which witnesses testified, considered post-trial briefing from both sides, and ultimately issued a reasoned decision that weighed both parties' positions. (*See* Pet. Br. 5; 56.1 Stmt. ¶¶ 24-26; Final Award). Especially given that "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case," *D.H. Blair & Co.*, 462 F.3d

---

*Id.* art. V(2). The Court has reviewed the enumerated grounds, and finds none of them implicated in the instant action. And, having filed no opposition, Respondents have not raised any of these grounds.

at 110 (citation and quotation marks omitted), there clearly exists a colorable basis for the Tribunal's decision where the Tribunal has set forth its rationale *and* the grounds for its decision are discernable from the facts of the case.

Finally, there are no grounds for setting aside the Final Award. *See D.H. Blair & Co.*, 462 F.3d at 110 ("[T]he court must grant the award unless the award is vacated, modified, or corrected." (citation and quotation marks omitted)). It is undisputed that the parties were subject to a valid and binding arbitration agreement, that both sides participated fully in the arbitration, and that a Final Award was issued. (*See* Pet. Br. 6; 56.1 Stmt. ¶¶ 8, 24-27). As noted above, Respondents have made no challenges to the Final Award's legal sufficiency, nor have they made any effort to vacate, modify, or correct the Final Award.

## CONCLUSION

For the foregoing reasons, Agrera's motion for summary judgment on its petition to confirm the arbitration award is GRANTED. The Clerk of Court shall enter judgment for Petitioner, terminate all pending motions, adjourn all remaining dates, and close the case.

SO ORDERED.

Dated:   October 3, 2014
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge